## CASE NO. 21-4255

# IN THE

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

v.

JAVAID PERWAIZ,

*Defendant - Appellant.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT NORFOLK

---

## OPENING BRIEF OF APPELLANT

---

Wesley P. Page
Jonathan D. Byrne
OFFICE OF THE PUBLIC DEFENDER
3400 United States Courthouse
300 Virginia Street East
Charleston, WV 25301
304-347-3350
wesley_page@fd.org
jonathan_byrne@fd.org

*Counsel for Appellant*

---

# TABLE OF CONTENTS

<u>Page</u>

TABLE OF AUTHORITIES ..................................................................................iii

STATEMENT OF JURISDICTION ........................................................................ 1

ISSUES FOR REVIEW ......................................................................................... 2

STATEMENT OF CASE......................................................................................... 2

    A.    Perwaiz, a long-time physician with a practice in Virginia, is charged with several dozen counts related to fraudulent healthcare practices............. 3

    B.    The Government introduces detailed evidence regarding Perwaiz's prior convictions and suspension of hospital privileges.................................. 5

    C.    During Perwaiz's three-week trial, the Government presents testimony from seven of his patients who were not named in any of the counts in the indictment .................................................................... 9

    D.    The district court imposes a 59-year sentence, nine years more than requested by the Government, after Perwaiz's trial counsel decline to make any sentencing argument on his behalf ........................................ 12

SUMMARY OF ARGUMENT ............................................................................. 18

ARGUMENT ...................................................................................................... 19

    I.    The district court abused its discretion by admitting the details of Perwaiz's decades old prior tax conviction and suspension of hospital privileges, given their limited relation to the charged offenses for which he was on trial ................................................................... 19

        A.    Standard of Review............................................................................... 19

        B.    The district court abused its discretion by allowing the Government to present detailed facts of prior conduct, in violation of the Rules of Evidence ....................................................... 19

C.     The district court abused its discretion by concluding that
Government Exhibit 150 was admissible under Rule 404(b)
of the Federal Rules of Evidence .......................................... 20

D.     The details of Perwaiz's suspension of privileges and prior
tax convictions were more prejudicial and probative and
should have been excluded under Rule 403 ........................................ 24

II.     The district court plainly erred when it allowed the Government to
present testimony from seven additional patients of Perwaiz,
beyond those that were specified in the charged counts of the
superseding indictment .................................................................... 27

A.     Standard of Review ................................................................. 27

B.     The testimony of the patients not named in specific counts of
the indictment was neither intrinsic to the charged offenses
nor otherwise admissible ..................................................... 28

III.     Perwaiz received ineffective assistance of counsel at sentencing,
where he was abandoned when counsel failed to argue for any
particular sentence "[d]ue to the fact that the Defendant maintains
his innocence." ................................................................................ 33

A. Standard of Review ................................................................ 33

B. Perwaiz's trial counsel provided no advocacy on his behalf at
sentencing, depriving him of his Sixth Amendment right to
the effective assistance of counsel ...................................... 33

C. The failure of Perwaiz's trial counsel to advocate on his
behalf at sentencing was the type of complete denial of
counsel that is presumed to be prejudicial............................ 35

CONCLUSION ....................................................................................... 43

REQUEST FOR ORAL ARGUMENT .................................................44

CERTIFICATE OF COMPLIANCE ...................................................45

# TABLE OF AUTHORITIES

## Cases

*Aparicio v. Artuz*,
269 F.3d 78 (2d Cir. 2001) ............................................................ 42

*Gardner v. Florida*,
430 U.S. 349 (1977) .................................................................... 34

*McMann v. Richardson*,
397 U.S. 759 (1970) .................................................................... 34

*Old Chief v. United States*,
519 U.S. 172 (1997) .................................................................... 24

*Owens v. Stirling*,
967 F.3d 396 (4th Cir. 2020) ........................................................ 33

*Peugh v. United States*,
569 U.S. 530 (2013) .................................................................... 37

*Strickland v. Washington*,
466 U.S. 668 (1984) .................................................................... 33

*United States v. Adelson*,
1:05-cr-00325-JSR-2 (S.D.N.Y.) .................................................... 39

*United States v. Adelson*,
301 F. App'x 93 (2d Cir. 2008) ..................................................... 39

*United States v. Adelson*,
441 F. Supp. 2d 506 (S.D.N.Y. 2006) ............................................ 40

*United States v. Aramony*,
88 F.3d 1369 (4th Cir. 1996) ........................................................ 24

*United States v. Awad*,
551 F.3d 930 (9th Cir. 2009) .................................................... 30-31

*United States v. Baptiste*,
596 F.3d 214 (4th Cir. 2010) .................................................... 33, 35

*United States v. Barnett*,
48 F.4th 216 (4th Cir. 2022) ........................................................ 38

*United States v. Basham,*
    561 F.3d 302 (4th Cir. 2009) ............................................................ 21, 29

*United States v. Brizuela,*
    962 F.3d 784 (4th Cir. 2020) ........................... 19, 29, 30, 31, 32

*United States v. Chin,*
    83 F.3d 83 (4th Cir. 1996) ........................................................ 29

*United States v. Colton,*
    231 F.3d 890 (4th Cir. 2000) ........................................................ 30

*United States v. Cronic,*
    466 U.S. 648 (1984) ........................................... 33, 35, 36, 37, 43

*United States v. Curry,*
    461 F.3d 452 (4th Cir. 2006) ........................................................ 39

*United States v. Ferguson,*
    676 F.3d 260 (2d Cir. 2011) ........................................................ 40

*United States v. Fowler,*
    58 F.4th 142 (4th Cir. 2023) ........................................................ 34

*United States v. Freeman,*
    24 F.4th 320 (4th Cir. 2022) ........................................................ 33

*United States v. Gillespie,*
    27 F.4th 934 (4th Cir. 2022) ........................................................ 38

*United States v. Grimmond,*
    137 F.3d 823 (4th Cir. 1998) ........................................................ 24

*United States v. Hall,*
    858 F.3d 254 (4th Cir. 2017) ........................................................ 23, 27

*United States v. Ham,*
    998 F.2d 1247 (4th Cir. 1993) ........................................................ 24, 25

*United States v. Hickman,*
    331 F.3d 439 (5th Cir. 2003) ........................................................ 30

*United States v. Johnson,*
    617 F.3d 286 (4th Cir. 2010) ........................................................ 20

*United States v. Kennedy,*
   32 F.3d 876 (4th Cir. 1994) ........................................................ 28

*United States v. Louthian,*
   756 F.3d 295 (4th Cir. 2014) ................................................ 38, 39

*United States v. Masters,*
   622 F.2d 83 (4th Cir. 1980) ................................................... 24, 28

*United States v. McBride,*
   676 F.3d 385 (4th Cir. 2012) ..................................................... 20

*United States v. Olano,*
   507 U.S. 725 (1993) .............................................................. 27, 28

*United States v. Parris,*
   573 F. Supp. 2d 744 (E.D.N.Y. 2008) .................................... 39, 40

*United States v. Powers,*
   40 F.4th 129 (4th Cir. 2022) ..................................................... 38

*United States v. Queen,*
   132 F.3d 991 (4th Cir. 1997) ..................................................... 23

*United States v. Reed,*
   Appeal No. 22-4258 .................................................................. 38

*United States v. Rose,*
   3 F.4th 722 (4th Cir. 2021) ....................................................... 38

*United States v. Siegel,*
   536 F.3d 306 (4th Cir. 2008) ..................................................... 20

*United States v. Taylor,*
   414 F.3d 528 (4th Cir. 2005) ..................................................... 34

*United States v. Williams,*
   445 F.3d 724 (4th Cir. 2006) ..................................................... 19

## Statutes

18 U.S.C. § 1028A .......................................................................... 1

18 U.S.C. § 1035 ............................................................................. 1

18 U.S.C. § 1344 ........................................................................... 30

v

18 U.S.C. § 1347 ................................................................ 1, 30, 31

18 U.S.C. § 3231 ...................................................................... 1

18 U.S.C. § 3553 .................................................................. 16, 35

18 U.S.C. § 3742 ...................................................................... 1

28 U.S.C. § 1291 ...................................................................... 1

## Other Authorities

Barry Boss and Kara Kapp, *How the Economic Loss Guideline Lost Its Way, and How to Save It,*
 18 Ohio St. J. Crim. L. 605 (2021) ................................... 40, 41

Fed. R. App. P. 34 ................................................................. 44

Fed. R. Evid. 403 ............................................................... *passim*

Fed. R. Evid. 404 ............................................................... *passim*

Reuters Staff, *Ex-AIG Exec Milton Sentenced to Four Years In Prison,* Reuters
 (January 27, 2009) ............................................................ 39

Reuters Staff, *Ex-General Re Chief Gets 2 Year Sentence for Fraud,* Reuters
 (December 16, 2008) ....................................................... 39-40

Table E-7 of 2021 USSG Sourcebook ........................................ 41

U.S.S.G. § 2B1.1 ........................................................ 12, 40, 41, 42

U.S.S.G. § 2B2.1 .................................................................. 41

## STATEMENT OF JURISDICTION

On November 8, 2019, a criminal complaint was filed in the Eastern District of Virginia charging Javaid Perwaiz with one count each of healthcare fraud, in violation of 18 U.S.C. § 1347, and making false statements related to healthcare matters, in violation of 18 U.S.C. § 1035. JA032. On December 5, 2019, an indictment was returned charging Perwaiz with five counts of healthcare fraud (Counts One through Five), three counts of making false statements related to healthcare matters (Counts Six through Nine), and two counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A (Counts Ten and Eleven). JA033-048. On June 19, 2020, a superseding indictment was returned, charging Perwaiz with 26 counts of healthcare fraud (Counts One through Twenty-Six), 33 counts of making false statements related to healthcare matters (Counts Twenty-Seven through Fifty-Nine), and three counts of aggravated identity theft (Counts Sixty, Sixty-One, and Sixty-Three). JA049-090. Because those charges constitute offenses against the United States, the district court had original jurisdiction pursuant to 18 U.S.C. § 3231. This is an appeal from the final judgment and sentence imposed after Perwaiz was convicted by a jury of Counts One through Ten, Fourteen through Thirty-One, Thirty-Three through Forty, and Forty-Four through Fifty-Nine. JA3420-3430. A judgment order was entered on May 18, 2021. JA3743-3762. Perwaiz timely filed a notice of appeal on May 20, 2021. JA3763. The United States Court of Appeals for the Fourth Circuit has jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

1

**ISSUES FOR REVIEW**

1.    Whether detailed evidence of the facts underlying Perwaiz's prior conviction for tax fraud and prior suspension of hospital privileges decades prior should have been admitted during his trial.

2.    Whether the district court plainly erred by allowing seven of Perwaiz's patients to testify at trial even though they were not named in any of the charged counts against him in the superseding indictment.

3.    Whether Perwaiz's trial counsel were ineffective by abandoning him at sentencing by failing to argue for any particular sentence "[d]ue to the fact that the Defendant maintains his innocence."

**STATEMENT OF CASE**

This appeal arises from a trial on a 63-count indictment, which led to Perwaiz's convictions on 52 counts of healthcare fraud and making false statements in relation to healthcare matters. At sentencing, the district court imposed a 59-year term of imprisonment, a *de facto* life sentence for Perwaiz. At issue in this appeal is whether the district court erred in admitting certain evidence that was beyond the scope of the charged crimes and whether Perwaiz's trial counsel were ineffective for providing him with no sentencing advocacy during the final, critical stage of his prosecution.

### A. Perwaiz, a long-time physician with a practice in Virginia, is charged with several dozen counts related to fraudulent healthcare practices.

Perwaiz was born in Pakistan in 1950. JA2622. After graduating from college and medical school he came to the United States in 1974. JA2625. He spent four years in Charleston, West Virginia, for his residency before relocating to the Chesapeake, Virginia, area, where he began practicing medicine in 1980. JA2626-2632. After a brief period working in partnership with other doctors, Perwaiz opened his own medical office, where he practiced as a board certified OB/GYN until his arrest in 2019. JA2633; JA9847.

In 2018, the FBI received a tip from a former colleague of Perwaiz alleging that he had performed an unnecessary procedure on a patient who was unaware that the procedure was taking place. JA9847. An investigation ensued that uncovered evidence suggesting that Perwaiz had engaged in a lengthy scheme to defraud various healthcare benefit programs, including Medicare and Medicaid, by submitting claims for services that were not medically necessary, based on falsified patient records, and, in some cases, were not performed at all. JA9848. The scheme could be broken down generally to include: (1) the falsification and modification of estimated due dates for pregnant mothers, leading to their early induction and child birth, JA9849-9850; (2) billing for

hysteroscopies[1] and colposcopies[2] that were not performed or were, in some instances, allegedly performed when the necessary equipment was defective, JA9850-9852; (3) patient records that did not match the complaints or conditions patients actually had, leading to the performing of unnecessary procedures based on the falsified complaints, JA9852-9858; and (4) falsifying dates on Medicaid forms requiring a 30-day waiting period before sterilization procedures were performed. JA9858-9859.

As a result of the investigation, Perwaiz was initially charged in a criminal complaint with one count each of healthcare fraud and making false statements in relation to healthcare matters. JA032. Ultimately, a 63-count superseding indictment was returned charging Perwaiz with 26 counts of healthcare fraud, 33 counts of making false statements, and three counts of aggravated identity theft.[3] JA069-090. Ten of the fraud counts included allegations that they resulted in serious bodily injury. JA063-070. The Government proposed to resolve matters by offering Perwaiz an agreement to plead guilty to a single fraud count, initially to one of the serious bodily injury counts (which carries a 20-year statutory maximum sentence) and then to a count without such

---

[1] A hysteroscope is an instrument for examining the cervix for evidence of cancer, fibroids, polyps, or other conditions. JA562.

[2] A colposcope is another instrument used to examine the cervix, usually based on abnormal results from a Pap smear or other tests. JA550.

[3] The superseding indictment contained an additional count of aggravated identity theft, Count Sixty-Two, which was withdrawn by the Government after the indictment was returned. JA088.

injury (which carries a 10-year statutory maximum sentence). JA165-166. Perwaiz rejected both offers and proceeded to trial. JA167-168.

**B.    The Government introduces detailed evidence regarding Perwaiz's prior convictions and suspension of hospital privileges.**

The investigation into Perwaiz revealed two incidents from his past practice that would become relevant for his trial. First, in 1983, Perwaiz had his privileges suspended by a local hospital "due to poor clinical judgment, unnecessary surgery, lack of documentation and discrepancies in recordkeeping." JA9847. He was ultimately censured.[4] *Ibid.* Second, in 1996, Perwaiz pleaded guilty to two counts of tax evasion in the Eastern District of Virginia, for which he was sentenced to probation. JA9848; JA9865-9866. As a result of those convictions his license to practice medicine was briefly suspended. JA9848. Two of the false statement counts, Counts Fifty-Eight and Fifty-Nine, were based on allegations that Perwaiz had not truthfully reported these prior incidents to a pair of insurance companies. JA085-086.

Prior to trial, Perwaiz filed a motion to exclude parts of the evidence related to those incidents under Rules 404 and 403 of the Federal Rules of Evidence. JA129-141. As to the loss of privileges, he argued that the Government intended to argue that because Perwaiz "committed some uncharged, civil wrong" that "he acted in

---

[4] The original document uses the term "censor," but clearly meant "censure." The latter term will be used throughout this brief.

accordance with that behavior in this case and is therefore guilty of criminal offenses." JA137. Even if the evidence was admissible under Rule 404(b), it was unduly prejudicial. JA138. Similarly, as to the prior tax convictions, Perwaiz argued that it would be improper to allow the Government to introduce such "an extremely prejudicial and inflammatory piece of information" at trial. JA136. In response, the Government argued that because the prior incidents were clearly relevant to the substance of Counts Fifty-Eight and Fifty-Nine "there is little, if any, additional prejudice from also admitting the conduct underlying these convictions." JA149.

The parties refined their arguments when the matter arose during trial.[5] As to the prior convictions, Perwaiz agreed that the "bottom line is, he was convicted of a felony, he pled guilty. That's admissible." JA2459. In spite of that concession, Perwaiz maintained his objection to the admission of the indictment (Government Exhibit 152A) in that case as evidence. *Ibid.* Perwaiz confirmed that there was no objection to the admission of the judgment (Government Exhibit 155), plea agreement (Government Exhibit 153), or statement of facts (Government Exhibit 154). JA2450. The district court noted that the statement of facts stated that the "United States would prove all of the factual allegations in the introductory section of the indictment, Page 1 through 6," and that so "far as I would be concerned, Page 1 through 6 could come in." *Ibid.* Those pages contain detailed factual allegations against Perwaiz in support of

---

[5] The district court did not rule on the matter prior to trial.

the charges in the indictment, such as that he classified the purchase of a Ferrari as a business expense. JA7489-7494. The district court then ruled that the statement of facts, to which Perwaiz stipulated, "does not have context without those portions of the indictment" and therefore those referenced portions were admissible, but the rest of the indictment was not. JA2463.

On the suspension of privileges, Perwaiz stated that the "argument would be similar," that "the jury does get to know about the suspension" but that anything beyond that should be limited to "things that he was – actually lost his privileges for, not any superfluous language or any other information." JA2465. Specifically, "a list of hysterectomies that Dr. Perwaiz supposedly did in 1983 that were not required or not authorized, anything about a sexual relationship with the patient" was not "what he lost his privileges for." JA2466. Therefore there was no objection to Government Exhibit 149, the letter stating that Perwaiz had lost his privileges had been suspended. JA2467; JA7483. As to Government Exhibit 151, a letter from the Virginia Department of Health Regulatory Boards informing Perwaiz of his censure, Perwaiz had no objection to the first paragraph referencing recordkeeping, but did object to the second which referenced a sexual relationship with a patient. JA2468-2469; JA7488. That was because the letter was not related to his loss of privileges and referenced a "completely unrelated issue." JA2469. The district court noted that Government Exhibit 150 was another letter from the Board informing Perwaiz of an investigation based on his loss of

privileges and that Government Exhibit 151 was "the outcome of that investigation." JA2470. The district court then observed that there had been "a lot of testimony . . . presented through cross-examination" that the incorrect answers about these prior incidents were "just an oversight, that somebody else filled in the forms, and he just didn't mention it" and that "in many ways, you've put this up in issue through the cross-examination." JA2471-2472. The district court further indicated that Government Exhibit 151 was relevant and had "great 404(b) value to say this was not just a mistake" because it states that the censure would "be part of your permanent record for future reference." JA2473. The district court therefore concluded that Government Exhibit 151 was admissible. JA2474. As to Government Exhibit 150, the district court recognized that it was "[p]erhaps" not relevant "to an actual charge" but that "over and over again it's been presented that these were just a small number of cases, that what's on these records is accurate." JA2475. Perwaiz explained that his objection to Government Exhibit 150 was that it was the "equivalent of a target letter," a "first step in investigating someone's license." JA2476. It did not include Perwaiz's response and did not recite any evidence produced by an investigation. *Ibid.* It was "very prejudicial" and "not relevant to whether he lost privileges . . . which we agree happened." JA2477. The district court ultimately held that all three exhibits were admissible. JA2481.

**C.    During Perwaiz's three-week trial, the Government presents testimony from seven of his patients who were not named in any of the counts in the indictment.**

Perwaiz's trial began on October 15, 2020, and would last until November 7, 2020. JA157-3360. The Government presented testimony from 56 witnesses, of which the largest group constituted former patients of Perwaiz. Each testified about her experience with Perwaiz and procedures he had performed on her.

For example, AC[6] was a young woman who went to Perwaiz when she was pregnant with her child. JA696-697. Her pregnancy had initially been confirmed at a hospital, where an ultrasound had produced a due date of October 2, 2019. JA698. After meeting with Perwaiz, the due date was changed to September 29, 2019, but she didn't ask him why. JA699. Finally, she was told she was going to be induced on September 21, 2019, but was not told why. JA701. She was induced, but ultimately had to have a C-section due to an issue with the umbilical cord. JA702-705.

AG was an older woman who went to Perwaiz after being diagnosed with HPV.[7] JA2465-2466. She testified that Perwaiz did not perform a hysteroscopy on her, even though her records indicate that he did. JA2168. She also testified that while her records indicated that several options for treatment were discussed, Perwaiz actually only

---

[6] All the patient witnesses were referred to by their initials during trial and will continue to be so identified in this brief.

[7] HPV, "or human papillomavirus, is a virus that is sexually transmitted that leads to pre-cancerous and cancerous changes to the cervix." JA547.

provided a hysterectomy as an option. JA2169. She agreed to the procedure because she was scared and was afraid of cancer. JA2169-2170. The surgery took place the Saturday after that appointment, which AG testified was due to Perwaiz's urgency to contain the "spread" of HPV. JA2170.

DW, a 29-year-old woman, testified that Perwaiz was the "family doctor" for her and her sister. JA684-685. After her second child, DW wanted to have her "tubes tied," but her "original doctor . . . he didn't believe in tying tubes after two children." JA688. DW "knew Dr. Perwaiz did it, so I went to him instead." *Ibid*. When asked about the consent form for the procedure, which includes notifications about the required 30-day waiting period, she testified that all she did was sign the document, but did not date it. JA690. The procedure itself was "probably a few weeks after" the initial meeting "or probably before that. I didn't have to wait long" and "wanted to do it as soon as possible." JA690-691.

AC, AG, and DW, along with sixteen other witnesses, were all named in specific counts of the superseding indictment for which Perwaiz was on trial. In addition to those patients, the Government presented testimony from seven others who were referenced in the superseding indictment's factual allegations, but were not the subjects of any count of the indictment.

DBD, APC, and AD all were identified in paragraph 72 of the superseding indictment and testified about their experience with Perwaiz and sterilizations, including

signing consent forms without dating them. JA073-074. DBD testified that she did not date the sterilization form at all when she signed it. JA491-492. APC testified that she was aware of the 30-day waiting period and when she brought it up Perwaiz said they could "work around it" and told her not to date the consent form. JA671. In addition, APC testified that Perwaiz performed a different sterilization procedure than the one she had requested. JA670; JA673-674.  AD testified that she did not date the consent form and that while Perwaiz told her the procedure would involve going in through her navel, when she woke up she had a four-to-five inch incision. JA1288.

MC, TDC, DC, and DA were all identified in paragraph 58 of the superseding indictment and testified about their experiences with Perwaiz and various surgical procedures. JA063-065. MC testified that she had multiple surgeries with Perwaiz over 17 or 18 years, but that her records contained descriptions of complaints about pain and cramping that she never made. JA2040-2044. TDC also testified that there were complaints in her records that she did not make prior to surgery. JA1797. DC testified that her records contained complaints she had not made and that Perwaiz told her she needed surgery to remove her ovaries, but did not explain why. JA1913. She also testified that after surgery Perwaiz told her he had performed a hysterectomy (which she testified she had not agreed to) and removed one ovary. JA1914-1915. Later, after her sister was diagnosed with ovarian cancer, DC went to another doctor and discovered she still had both ovaries. JA1916. Finally, DA testified that her records

11

contained complaints she did not have along with a notation that "[p]atient wants definitive surgery, i.e., vaginal hysterectomy" which she never said. JA1015-1018.

The Government presented over two dozen other witnesses, including former employees, others who worked with Perwaiz in various facilities, and representatives of the various insurance companies involved. The Government also presented expert testimony about the standard of care applicable to the patients who testified and whether the procedures performed were appropriate for the complaints (or lack thereof) made by patients. The defense case primarily consisted of the testimony of Perwaiz, who testified over the course of three days. JA2621-3355.

The jury convicted Perwaiz on 23 counts of healthcare fraud and 29 counts of making false statements in relation to healthcare matters. JA3420-3430.

### D. The district court imposes a 59-year sentence, nine years more than requested by the Government, after Perwaiz's trial counsel decline to make any sentencing argument on his behalf.

Following Perwaiz's conviction, a Presentence Investigation Report ("PSR") was prepared to assist the district court at sentencing. JA9843-9884. Perwaiz's advisory Guideline range was calculated under U.S.S.G. § 2B1.1, which applies to "larceny, embezzlement, and other forms of theft." The probation officer recommended a base offense level of seven, along with numerous upward adjustments:

- 20-level enhancement for a loss amount between $9.5 and $25 million
- 2-level enhancement because the offense involved ten or more victims

- 3-level enhancement for loss to a Government healthcare program between $7 and $20 million
- +2 enhancement for the use of sophisticated means
- +2 enhancement because the offense involved the reckless risk of serious bodily injury
- +2 enhancement because the victim of the offense was vulnerable
- a further +2 enhancement because the offense involved a large number of vulnerable victims
- +2 enhancement for abuse of a position of trust
- +2 enhancement for obstruction of justice

JA1864-9865. In total, Perwaiz's offense level was 44, reduced to 43 by operation of the Guidelines. JA9865. Combined with a Criminal History Category I,[8] Perwaiz's advisory Guideline "range" was life in prison, restricted by the aggregate statutory maximum for his offenses of conviction of 5700 months. JA9866; JA9877-9878. The Government had no objection to those calculations. Perwaiz, through counsel, objected to all of them generally because "he pled not guilty in this matter, testified that he did not commit any of the offenses and maintains that he is not guilty of any of the offenses." JA9835. Trial counsel did not argue that any of the particular enhancements should not apply.

The PSR also contained a lengthy summary of Perwaiz's life, including his employment and medical histories. JA9867-9877. Perwaiz was born in "a small village" in Pakistan in 1950. JA9867. Although "there was no electricity or running water," he

---

[8] Perwaiz's prior tax offenses were too old to count for criminal history points. JA9865-9866.

explained that he never suffered any "abuse or neglect as a child." *Ibid.* He had a brother and sister who continued to live in Pakistan, as well as another brother who passed away approximately 15 years ago. While at one time Perwaiz would return to Pakistan to visit every few years, he had not been there in more than 20 years. After the death of his brother, he began helping to financially support his widow and four children, sending at least $1000 per month prior to his arrest. *Ibid.*

Perwaiz came to the United States in 1974, by himself, which was "frightening" and "lonely." JA9867. At one point, he was sleeping on a kitchen floor of a family friend while looking for work. JA9868. He knew little English, but became a United States citizen in the early 1980s. JA9845, 9867. After arriving in the United States he lived in northern Virginia for two years, then Charleston, West Virginia, for the next four, before settling in the Chesapeake, Virginia, area in 1980. JA9868. He has never married or had any children. JA9867.

In 2010, Perwaiz had quadruple bypass surgery, from which he continues to have physical limitations. He also suffers from coronary artery disease, hypertension, and high cholesterol. For over 20 years he had dealt with back pain, for which he had been receiving pain management prior to his arrest. JA9869. He contracted COVID-19 while in custody awaiting trial, but was successfully treated. JA9870.

Both parties filed memoranda regarding sentencing on May 11, 2021. JA3447-3531. The Government argued for a sentence of 600 months. JA3451 at 1. As to the

14

nature of the offenses for which Perwaiz was convicted, the Government argued that "the Court knows from trial that very little Perwaiz wrote down in the medical records was accurate or truthful" and that "even more serious" than the financial fraud was "the nature and circumstances of the crime against his individual victims." JA3459. The Government argued that many victims "underwent invasive surgeries and procedures and experienced pain and discomfort" with some having "experienced permanent, debilitating pain and other complications." *Ibid.* While the Government argued that "alone, the nature and circumstances of the offense" supported a 600-month sentence, Perwaiz's history and characteristics did as well. JA3461. That was because Perwaiz "has spent decades defrauding insurance companies at the expense of and without regard to the women he took an oath to heal." *Ibid.* In addition to that argument for a particular sentence, the Government reported that it had consulted with Perwaiz's counsel and reported that counsel "stated that, for purposes of sentencing, the Court can rely on the jury's verdict" and that "the Court's reliance on the jury's verdict is sufficient to support the PSR and the Guidelines calculations." JA3457.

In the memorandum filed on Perwaiz's behalf, his trial counsel simply repeated the general objection to the PSR and then stated that "[d]ue to the fact that [Perwaiz] maintains his innocence, counsel is not requesting any particular sentence." JA3447-3448.

Sentencing for Perwaiz was held on May 17, 2021. JA3532-3742. Addressing the advisory Guideline calculations in the PSR, the district court noted the positions of the parties and that it "does not have to rule on a PSR where there are no specific objections, and here it's just a blanket objection that the defendant maintains his position that he is not guilty" which was "contrary to the jury verdict beyond a reasonable doubt." JA2537.

After the district court heard from several victims, the Government reiterated its argument for a sentence of 600 months in prison. JA3558. The Government recognized that, due to Perwaiz's age, that was "equivalent to a life sentence," but that "based on the evidence this Court saw at trial, and the damage the defendant has caused so many women, and the complete lack of remorse" that sentence would be "entirely appropriate in this manner." JA3559. The Government stressed the need for deterrence and to protect the community, arguing that "if the defendant was allowed to go out that door today, he has shown that he would go right ahead and continue these crimes today" and therefore the "sentence cannot let that be a possibility." JA3564.

In response, Perwaiz's counsel stated that "I have every confidence that the Court will fashion a sentence . . . that is sufficient but not greater than necessary pursuant to 18 U.S.C. § 3553." JA3569. Counsel did note that Perwaiz was "71 years old" with "ongoing medical conditions." *Ibid.* Counsel also noted that Perwaiz successfully completed the probationary sentence he received for his prior tax

convictions and "did pay back the funds to the United States." JA3570. In that case he "made no effort to flee or to avoid that process . . . faced that obligation and satisfied it" and "acknowledged his guilt in a case for which he believed he was guilty." *Ibid*. Counsel also pointed out that Perwaiz no longer had a medical license and that "there is no expectation if Dr. Perwaiz were released from custody at any point that he would resume the practice of medicine" because he "will have no offices . . . no staff" and "no malpractice insurance." *Ibid*. In the end, counsel stated "I would just stand on our position paper" and did not argue for any particular sentence. *Ibid*.

The district court imposed a sentence of 708 months, spread out among the counts of conviction. JA3583-3584. The district court cited the "nature and circumstances of the offense and your history and characteristics" as the "most important" factor for the Court to consider in this case." JA3571. The district court called Perwaiz's criminal conduct "overwhelming," citing particularly that he "abused the trust that your patients had placed in you, that your profession had placed in you." JA3572. Citing that Perwaiz "has expressed no remorse for such a callous disregard for the welfare of the patients and the victims" and that it "was done for greed and to enhance a very lavish lifestyle," the district court concluded that "this conduct is simply unconscionable." *Ibid*. The district court also pointed to "the overwhelming amount of fraud at every point in the process." JA3574. In addition to the term of imprisonment,

17

the district court imposed concurrent three-year terms of supervised release on each count and a restitution obligation of over $18.5 million. JA3584-3585.

## SUMMARY OF ARGUMENT

Perwaiz's convictions should be reversed for either of two reasons, both related to the admission of prejudicial, extraneous evidence at trial. First, the district court abused its discretion by allowing the Government to admit factual details of Perwaiz's prior suspension of hospital privileges in 1983 and his tax fraud conviction in 1996. The allegations set forth in one Government exhibit related to the suspension of privileges were not admissible under Rule 404(b) as they were not relevant to an issue other than character, not necessary to prove an essential element of any offense, and were unreliable. Even if that evidence was admissible under Rule 404(b), it should have been excluded under Rule 403 because it was more prejudicial than probative and invited the jury to convict Perwaiz based on actions that allegedly occurred decades ago. Likewise, the factual details of Perwaiz's 1996 conviction were unduly prejudicial and should have been excluded under Rule 403.

In addition, this Court should vacate Perwaiz's sentence of imprisonment. Following Perwaiz's convictions at trial, his trial counsel did not engage in any sentencing advocacy on his behalf. Instead, trial counsel took the position that they would not argue for any particular sentence because Perwaiz had gone to trial and continued to maintain his innocence. That decision flies in the face of numerous

examples of cases where defendants were convicted at trial, engaged in sentencing advocacy, and received lesser sentences as a result. Trial counsel's abandonment of Perwaiz at sentencing is the type of complete denial of counsel the Supreme Court has recognized is inherently prejudicial and is the kind of ineffective assistance of counsel that can be addressed on direct appeal.

## ARGUMENT

**I.     The district court abused its discretion by admitting the details of Perwaiz's decades old prior tax conviction and suspension of hospital privileges, given their limited relation to the charged offenses for which he was on trial.**

### A.     Standard of Review

This Court reviews evidentiary rulings for abuse of discretion. *United States v. Brizuela*, 962 F.3d 784, 791 (4th Cir. 2020). A "district court's decision to admit evidence over a Rule 403 objection will not be overturned except under the most extraordinary circumstances, where that discretion has been plainly abused." *United States v. Williams*, 445 F.3d 724, 732 (4th Cir. 2006)(cleaned up).

### B.     The district court abused its discretion by allowing the Government to present detailed facts of prior conduct, in violation of the Rules of Evidence.

In addition to the counts in the superseding indictment related directly to the care of specific patients, Counts Fifty-Eight and Fifty-Nine charged Perwaiz with making false statements on certifications to a pair of healthcare benefit programs with regard to prior criminal convictions and suspension of his hospital privileges. JA085-

087. As part of its proof on those counts, the Government moved to introduce a series
of documents about each incident. While the documents laying out that Perwaiz had
previously sustained a conviction for filing false tax returns in 1996 and that his hospital
privileges had been suspended in 1983 were relevant to those charges and admissible,
the details underlying each incident should not have been presented to the jury. In the
case of the hospital privileges the district court abused its discretion by allowing the
introduction of evidence of mere allegations against Perwaiz under Rule 404(b) as other
act evidence. As to both the suspension evidence and the underlying details of the tax
convictions, that evidence was more prejudicial than probative under Rule 403 and
should have been excluded.

### C.    The district court abused its discretion by concluding that Government Exhibit 150 was admissible under Rule 404(b) of the Federal Rules of Evidence.

Federal Rule of Evidence 404(b) provides limited exceptions for admitting
evidence of other bad acts allegedly committed by the defendant. *United States v. McBride*,
676 F.3d 385, 395 (4th Cir. 2012); *United States v. Johnson*, 617 F.3d 286, 296 (4th Cir.
2010); *United States v. Siegel*, 536 F.3d 306, 314 (4th Cir. 2008). Rule 404(b) prohibits the
introduction of evidence of other bad acts to show bad character or the propensity to
break the law. *Siegel*, 536 F.3d at 317. In order to be considered to be admissible under
Rule 404(b), evidence must be (1) relevant to an issue other than character; (2) necessary

20

in the sense that it is probative of an essential claim or element of the offense; (3) and reliable. *United States v. Basham*, 561 F.3d 302, 326 (4th Cir. 2009).

The Government introduced three documents with reference to Perwaiz's 1983 suspension of privileges. The first, Government Exhibit 149, was a letter from one healthcare administrator to another noting Perwaiz's suspension. JA7483. There was, and is, no objection to the admissibility of that document. JA3168. The second, Government Exhibit 150, was a letter from the Virginia Department of Health Regulatory Boards to Perwaiz informing him of the opening of an investigation of him based on the suspension. JA7474-7487. Finally, Government Exhibit 151 was another letter to Perwaiz from that department informing him that it was recommending he be censured for failing to keep accurate records and "lack of judgment in regards to a sexual relationship with a patient." JA7488. Of particular importance, given the charges against Perwaiz for which he was on trial, Government Exhibit 150 set forth several allegations that he performed unnecessary surgeries on patients. JA7484-7486. None of those allegations served as a basis for either of the censures in Government Exhibit 151.

Those allegations are put into stark relief upon examining the district court's rationale for overruling Perwaiz's objection to the admission of Government Exhibits 150 and 151. With regard to Government Exhibit 151, the district court's analysis focused on its relevance to Counts Fifty-Eight and Fifty-Nine, noting that through

cross-examination of Government witnesses Perwaiz had suggested that the false answers related to the loss of privileges was "just an oversight" and the fault of others. JA2471-2472. The district court also concluded that the exhibit had "great 404(b) value to say this was not just a mistake," noting that Government Exhibit 151 stated that the censures would be "part of your permanent record for future reference." JA2473.

By contrast, the district court recognized that Government Exhibit 150 is "[p]erhaps not" relevant to the "actual charge" – that is, Counts Fifty-Eight and Fifty-Nine. JA2475. After all, it contains only allegations, not the findings of any investigation or even Perwaiz's responses to them. It does not inform Perwaiz of any disciplinary action in the way Government Exhibits 149 and 151 do. However, the district court explained, "over and over again it's been presented that these were just a small number of cases, that what's on these records is accurate." *Ibid.* Noting that the credibility of the patient witnesses has been contested, this exhibit shows "that when he was allegedly doing these things that are throughout the indictment" it was admissible to "show intent." *Ibid.*

It is difficult to imagine how unproven allegations from 1983 could possibly show a person's intent to commit offenses charged to have occurred decades later. The only way one has anything to do with the other is by presuming first that the allegations are true (which Government Exhibit 151 indicates they were not) and demonstrate a consistent pattern of conduct that occurred across four decades. That is precisely the

kind of evidence that Rule 404 is designed to exclude from a jury's consideration. "Rule 404(b)'s general exclusion of evidence of a defendant's prior bad acts reflects the revered and longstanding policy that . . . an accused is tried for *what* he did, not *who* he is." *United States v. Hall*, 858 F.3d 254, 266 (4th Cir. 2017)(cleaned up). That is, it "protects against juries trying defendants for prior bad acts rather than charged acts." *United States v. Queen*, 132 F.3d 991, 996 (4th Cir. 1997). That is precisely what Government Exhibit 150 invited the jury to do – to try Perwaiz on who he was (or allegedly had been decades prior) rather than what he had allegedly done during the time of the charged scheme.

As a result, Government Exhibit 150 met none of the elements necessary for admission under Rule 404(b). First, it was not relevant to an issue other than character as the unsubstantiated allegations contained in it could say nothing of Perwaiz's state of mind decades later. Second, it was not necessary to prove any essential element of the relevant offenses – Counts Fifty-Eight and Fifty-Nine – in the way that Government Exhibits 149 and 151 were. Finally, it is not reliable because the letter only contains unproven allegations that did not form the basis of the censures described in Government Exhibit 151. For all those reasons, the district court abused its discretion by admitting Government Exhibit 150 into evidence.

### D. The details of Perwaiz's suspension of privileges and prior tax convictions were more prejudicial and probative and should have been excluded under Rule 403.

Rule 403 requires the exclusion of evidence, even that otherwise admissible under Rule 404(b), if its probative value is outweighed by the danger of unfair prejudice to the defendant. *United States v. Masters*, 622 F.2d 83, 87 (4th Cir. 1980). Unfair prejudice means more than that the evidence in question is damaging to the defense. *United States v. Grimmond*, 137 F.3d 823, 833 (4th Cir. 1998)("[e]vidence that is highly probative invariably will be prejudicial to the defense"). Rather, unfair prejudice "speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997).

Rule 403, by its terms, applies only to evidence that is otherwise relevant and admissible. Thus, while "the balance under Rule 403 should be struck in favor of admissibility, and evidence should be excluded only sparingly," *United States v. Aramony*, 88 F.3d 1369, 1378 (4th Cir. 1996), there are, nonetheless, situations where exclusion under Rule 403 is appropriate. That includes situations where the contested evidence would be "unduly prejudicial," reflecting "a genuine risk that the emotions of the jury will be excited to an irrational manner" and "this risk is disproportionate to the probative value of the offered offense." *United States v. Ham*, 998 F.2d 1247, 1252 (4th Cir. 1993); *see also* Advisory Committee's Note on Fed. Rule Evid. 403 ("unfair prejudice

within this context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one")(cleaned up).

*Ham* provides a clear example of when exclusion under Rule 403 is appropriate. In that case, the defendants were charged and convicted "for RICO and mail fraud violations" related to the running of a Hare Krishna community. *Ham*, 998 F.2d at 1249. At trial, over the objection of the defendants, the district court allowed the Government to present evidence of "child molestation and homosexual conduct." *Id.* at 1251-1252. This Court held that the evidence should have been excluded under Rule 403, which "calls for weighing the need for admission against potential harms." *Id.* at 1252.

Assuming, *arguendo*, that Government Exhibit 150 is otherwise admissible under Rule 404(b), it should have been excluded under Rule 403. The unsubstantiated allegations of improper conduct in that exhibit have little probative value about whether, decades later, Perwaiz engaged in healthcare fraud. What they did was to suggest, without any evidentiary support, that Perwaiz had a lengthy history of precisely the same type of fraud for which he was on trial. It could only suggest to the jury that he was, and had always been, a fraudster who could not be believed and was guilty of the charged offenses. It invited the jury to judge him based on past conduct, not the conduct that formed the basis of the superseding indictment.

25

Similarly, the additional details of Perwaiz's prior tax convictions should have been excluded under Rule 403.[9] In 1996, Perwaiz pleaded guilty to two counts of filing false tax returns as part of a plea agreement in which the Government dismissed four other counts. JA7523. He was sentenced to concurrent terms of probation which he completed without issue. JA7524; JA9865-9866. The judgment memorializing those convictions and sentence was clearly relevant and properly admitted as part of the evidence against Perwaiz on Counts Fifty-Eight and Fifty-Nine. The other supporting documentation, however, provided details of the offense that were of little probative value to any issues the jury had to resolve and substantially prejudicial to Perwaiz. In particular, Government Exhibit 152A, the indictment in the 1996 case, contained several pages that detailed the facts of the offenses, including how Perwaiz classified personal and other expenses as business expenses for tax purposes. JA7489-7495. The district court admitted those pages of the indictment on the theory that they were referenced in the statement of facts (Government Exhibit 154) which was incorporated as part of the plea agreement (Government Exhibit 153) – neither of which, ultimately, Perwaiz objected to being admitted. JA2460-2463. Yet the relevant evidence related to that incident was not the underlying facts of the conviction, but the fact of the conviction itself, which Perwaiz had allegedly failed to properly report. The underlying facts were therefore of little probative value, yet played into the Government's narrative

---

[9] Perwaiz does not, in this appeal, argue that they were inadmissible under Rule 404(b).

that Perwaiz engaged in fraud to fund a lavish lifestyle, the kind exemplified by attempting to claim purchasing a Ferrari is a business expense.

At this Court has noted, "Rule 404(b)'s general exclusion of evidence of a defendant's prior bad acts reflects the revered and longstanding policy that . . . an accused is tried for *what* he did, not *who* he is." *Hall*, 858 F.3d at 266 (cleaned up). That is what the district court allowed to happen in this case. By allowing the Government to present detailed underlying facts of incidents which occurred decades prior to the conduct charged in the superseding indictment, it invited the jury to convict him on extraneous evidence unrelated to the charges for which he was on trial. Because that evidence was highly prejudicial and of little probative value to the issues at trial, the district court plainly abused its discretion by allowing its admission at trial.

## II. The district court plainly erred when it allowed the Government to present testimony from seven additional patients of Perwaiz, beyond those that were specified in the charged counts of the superseding indictment.

### A. Standard of Review

Because Perwaiz did not object to the admission of this testimony in the district court, review is for plain error. In order to prevail under that standard, Perwaiz must show that error occurred, the error was plain, and the error affected his substantial rights. *United States v. Olano*, 507 U.S. 725, 732 (1993). A "plain" error is one that is "clear, or equivalently, obvious." *Id.* at 734. In most cases, although not all, a "defendant must make a specific showing of prejudice to satisfy the 'affecting substantial rights'

27

prong." *Id.* at 735. Even if those showings are made, this Court "should correct a plain

forfeited error affecting substantial rights if the error 'seriously affect[s] the fairness,

integrity or public reputation of judicial proceedings.'" *Id.* at 736.

### B. The testimony of the patients not named in specific counts of the indictment was neither intrinsic to the charged offenses nor otherwise admissible.

The focus of the Government's case against Perwaiz was the testimony of more

than two dozen former patients. Of those, 19 were directly related to charged counts

of the superseding indictment in which they were named victims. The rest – DPD,

APC, AD, MC, TDC, DC, and DA – were listed in background factual portions of the

superseding indictment but were not linked to specific counts. In other words, their

testimony did not relate to specific charged offenses, but other conduct that took part

during the scheme for which Perwaiz was on trial. Given the discrete nature of the

charges against Perwaiz and the numerous witnesses who testified about those offenses,

it was plain error for the district court to allow the Government to present testimony

from patients whose treatment was not part of any charged count of the indictment.

"Evidence of uncharged conduct is not considered other crimes evidence if it

arose out of the same . . . series of transactions of the charged offense . . . or if it is

necessary to complete the story of the crime (on) trial." *United States v. Kennedy*, 32 F.3d

876, 885 (4th Cir. 1994)(cleaned up); *see also Masters*, 622 F.2d at 87. In other words, if

it is "intrinsic" to the crime charged and "is necessary to provide context relevant to

28

the criminal charges." *Basham*, 561 F.3d at 326 (cleaned up); *see also United States v. Chin*, 83 F.3d 83, 88 (4th Cir. 1996)("other criminal acts are intrinsic when they are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged")(cleaned up).

This Court most recently addressed the line between extrinsic and intrinsic evidence in *United States v. Brizuela*, 962 F.3d 784 (4th Cir. 2020), a case factually very similar to this one. Brizuela, a physician, was charged with numerous counts of distributing controlled substances unlawfully. *Id.* at 786. At trial, the Government called two witnesses whose prescriptions were the subject of charged offenses and four other patients, "although none of Brizuela's charges related to their treatment." *Id.* at 789. On appeal, this Court agreed with Brizuela that the testimony of the second group of witnesses should not have been admitted. This Court rejected the Government's argument that the testimony was admissible under *Kennedy* to "complete the story" of the charged offenses. This Court concluded that "for evidence of uncharged conduct to be admissible to 'complete the story' of a charged offense" it "must be probative of an integral component of the crime on trial or provide information without which the factfinder would have an incomplete or inaccurate view of other evidence or of the story of the crime itself." *Id.* at 795. Such "evidence must be 'necessary' to 'complete the story' of the charged offense," which "requires a hard look to ensure that there is a clear link or nexus between the evidence and the story of the charged offense, and that

the purpose for which the evidence is offered is actually essential." *Ibid.* Without that scrutiny, the "doctrine might be used to disguise the type of propensity evidence that Rule 404(b) is meant to exclude." *Ibid.* The testimony in *Brizuela* could not meet that high standard because each count of distribution was a complete episode and the testimony was not necessary to complete the story of the charged offenses. *Id.* at 796.

*Brizuela* turned on the fact that each distribution of drugs was a separate offense, complete when the distribution occurred. The same is true with the fraud charged in this case. In interpreting bank fraud under 18 U.S.C. § 1344, which has language similar to § 1347, this Court recognized that in determining whether multiple counts of an indictment were multiplicitous "we must determine whether each count charges a separate execution of a scheme to defraud or instead simply alleges an act in furtherance of the scheme." *United States v. Colton*, 231 F.3d 890, 909 (4th Cir. 2000). In *United States v. Hickman*, 331 F.3d 439, 445 (5th Cir. 2003), the court recognized that § 1347 is "almost identical" to § 1344 and applied the separate execution analysis to a multiplicity analysis. Noting that the statute "punishes executions or attempted executions of schemes to defraud," the court concluded that "any scheme can be executed a number of times, and each execution may be charged as a separate count." *Id.* at 446. The court then concluded that in that particular case it found "the interdependence of the acts" to be "dispositive," as "with each claim submission, Hickman owed a new, independent obligation to be truthful to the insurer." *Id.* at 447; *see also United States v. Awad*, 551 F.3d

930, 938 (9th Cir. 2009)("[e]ach submission of a fraudulent claim to a healthcare benefit program, rather than being simply an act in furtherance of a larger scheme to defraud, is a separate execution of the scheme and is itself chargeable as a separate count").

It was possible for Perwaiz to be charged with 26 counts of healthcare fraud under § 1347 because each alleged false billing was a complete, discrete act, in the same way that each distribution of drugs is a complete, discrete act. The Government was able to obtain the decades-long sentence imposed in this case because each submission was its own offense. As in *Brizuela*, the testimony of patients outside those related to charged counts of the superseding indictment were not intrinsic to those offenses that were charged.

Nor were they admissible under Rule 404(b). In *Brizuela*, this Court rejected the argument that the additional testimony was relevant to the issue of absence of mistake, pointing out that "Brizuela never asserted he wrote any of the 21 prescriptions charged in the indictment due to mistake or accident" and "argued his conduct was appropriate and in the best interest of his patients." *Brizuela*, 962 F.3d at 798. The same is true in this case. Perwaiz's defense was not that he accidentally did the acts charged in the superseding indictment, but that "his conduct was appropriate and in the best interest of his patients." For the same reason that the Government's evidence in *Brizuela* failed under Rule 404(b), it fails in this case as well.

31

In light of *Brizuela*, the district court's admission of the testimony of DPD, APC, AD, MC, TDC, DC, and DA was both error and plain. That error was also prejudicial, as the testimony of those witnesses were particularly "sympathetic and dramatic." *Brizuela*, 962 F.3d at 799 (finding the error in that case not harmless in spite of the "significant evidence of Brizuela's guilt aside from the evidence of uncharged conduct"). For example, DBD testified that after the sterilization Perwaiz performed was reversed she had at least four miscarriages. JA495. DA testified that she suffered pain and sepsis caused by damage done to her bladder during surgery that was so significant that, when she could not find a lawyer to help her sue Perwaiz for malpractice, she sought paralegal training to pursue a case against him *pro se*. JA1029-1032. DC testified that Perwaiz told her after surgery he had performed a hysterectomy (which she testified she had not agreed to) and removed one ovary. JA1914-1915. Later, after her sister was diagnosed with ovarian cancer, DC went to another doctor and discovered she still had both ovaries. JA1916. Given their lack of relevance to any particular count in the superseding indictment, such testimony was inherently prejudicial. Finally, this error is the type this Court should notice, as it would call "the fairness, integrity or public reputation of judicial proceedings" into question to have Perwaiz convicted based, in part, on such testimony.

### III. Perwaiz received ineffective assistance of counsel at sentencing, where he was abandoned when counsel failed to argue for any particular sentence "[d]ue to the fact that the Defendant maintains his innocence."

### A. Standard of Review

To show ineffective assistance of counsel, a defendant must meet one of two standards. Under one standard, he must show (1) "'that counsel's performance was deficient,' and (2) that counsel's deficient performance 'prejudiced the defense.'" *Owens v. Stirling*, 967 F.3d 396, 411-412 (4th Cir. 2020), *quoting Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the other standard, a defendant can show he received ineffective assistance of counsel in one of a few limited "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified," including "the complete denial of counsel." *United States v. Cronic*, 466 U.S. 648, 658, 659 (1984). This Court can address issues of ineffective assistance of counsel raised on direct appeal "where the record conclusively establishes ineffective assistance." *United States v. Baptiste*, 596 F.3d 214, 216, n.1 (4th Cir. 2010); *see also United States v. Freeman*, 24 F.4th 320 (4th Cir. 2022)(vacating sentence on direct appeal due to ineffective assistance of counsel).

### B. Perwaiz's trial counsel provided no advocacy on his behalf at sentencing, depriving him of his Sixth Amendment right to the effective assistance of counsel.

The Sixth Amendment provides that in "all criminal cases, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defense." The Supreme

Court has recognized that "the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771, n.14 (1970). In addition to trial proceedings related to guilt or innocence, "sentencing is a critical stage of the criminal proceeding at which [the defendant] is entitled to the effective assistance of counsel." *Gardner v. Florida*, 430 U.S. 349, 358 (1977); *see also United States v. Taylor*, 414 F.3d 528, 535–36 (4th Cir. 2005).

Perwaiz's trial counsel vigorously contested the evidence presented by the Government at trial. However, when the case turned to sentencing, trial counsel abandoned Perwaiz to the district court and the Government. After the PSR was produced trial counsel lodged a general objection to the sections of it that laid out the facts of the case and the Guideline calculations because Perwaiz "pled not guilty in this matter, testified that he did not commit any of the offenses and maintains that he is not guilty of any of the offenses." JA9883. Such general objections are not sufficient to raise any issue at sentencing with regard to the PSR or the Guideline calculations made therein. *See United States v. Fowler*, 58 F.4th 142, 151 (4th Cir. 2023)(defendant must make particular showing that information in PSR is unreliable; otherwise district court is free to adopt that information). Then in a memorandum filed prior to sentencing, styled as the "position of the defendant . . . with respect to sentencing factors," Perwaiz's counsel reasserted that general objection before concluding that due "to the fact that the Defendant maintains his innocence, counsel is not requesting any particular sentence."

JA3448. By contrast, the Government made a lengthy argument in support of a sentence of fifty years in prison, a *de facto* life sentence given Perwaiz's age. JA3451-3466. At sentencing itself, while Perwaiz's counsel pushed back slightly against a couple of the points made by the Government, they stuck to their posture of not requesting any particular sentence for Perwaiz, stating only that they had "every confidence that the Court will fashion a sentence . . . that is sufficient but not greater than necessary pursuant to 18 U.S.C. § 3553." JA3569.

Trial counsel's decision not to contest anything at sentencing deprived Perwaiz of his Sixth Amendment rights. Faced with the potential of an enormous sentence at stage of his case when the assistance of counsel was critical, Perwaiz was abandoned. For that reason, this is one of those rare situations "where the record conclusively establishes ineffective assistance." *Baptiste*, 596 F.3d at 216, n.1.

### C. The failure of Perwaiz's trial counsel to advocate on his behalf at sentencing was the type of complete denial of counsel that is presumed to be prejudicial.

In *Cronic*, the defendant was convicted of multiple counts of fraud after being appointed "a young lawyer with a real estate practice" to represent him who was given "only 25 days for pretrial preparation, even though it had taken the Government over four and one-half years to investigate the case" which involved "thousands of documents." *Cronic*, 466 U.S. at 649. On appeal, the Sixth Circuit reversed due to ineffective assistance of counsel, "because it inferred that" the defendant's "right to the

35

effective assistance of counsel had been violated" using a test that required reversal "even if the lawyer's actual performance was flawless." *Id.* at 652-653. The Supreme Court ultimately reversed the Sixth Circuit, but in doing so did recognize a small universe of situations where prejudice due to ineffective assistance of counsel must be presumed.

The Supreme Court noted that "lawyers in criminal cases are necessities, not luxuries," recognizing, as one commentator put it, that of "all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he must have." *Cronic*, 466 U.S. at 653, 654 (cleaned up). Thus, if "no actual 'Assistance' 'for' the accused's 'defence' is provided, then the constitutional guarantee has been violated." *Id.* at 654. Key to "the adversarial process protected by the Sixth Amendment" is "that the accused have counsel acting in the role of an advocate." *Id.* at 656 (cleaned up). Thus, "if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated." *Id.* at 656-657.

Therefore, there are "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Cronic*, 466 U.S. at 658. Of those, the "[m]ost obvious . . . is the complete denial of counsel." *Id.* at 659. That is because the "presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his

trial." *Ibid.* Thus, "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *Ibid.*

That is what occurred here. Going into sentencing, the Guideline "range" in this case, which is generally the "anchor" for "the district court's discretion," *Peugh v. United States*, 569 U.S. 530, 549 (2013), provided little meaningful guidance. The applicable Guideline "range" was life in prison, capped by the cumulative total of the statutory maxima for Perwaiz's convictions, 5700 months (475 years). JA9866; JA9877-9878. The district court thus had vast discretion to craft a particular sentence in this case. The Government played its adversarial role and argued for a sentence of 50 years. Perwaiz's counsel did nothing, resting on the fact that Perwaiz maintained his innocence as a reason for not engaging in sentencing advocacy on his behalf.

That position appears to be based on a fundamental misunderstanding – that a defendant who goes to trial, is convicted, and thereafter maintains their innocence, has no choice but to leave their sentencing to the mercy of the district court (aided by argument from the Government). That is false, as defendants routinely present arguments for reduced sentences after guilty verdicts at trial. For example, undersigned counsel has an appeal currently pending before this Court wherein the defendant was convicted on two counts at trial, contested numerous Guideline enhancements at sentencing, and was able to win a downward variance from the advisory Guideline

range. *United States v. Reed*, Appeal No. 22-4258, Dkt. No. 15. Indeed, some of those sentencing issues are presented to this Court for further review. *Id.* at 26-37. In fact, the Federal Reporter is full of cases from this Court where defendants were convicted at trial then raised sentencing issues, with various degrees of success. *See, e.g., United States v. Barnett*, 48 F.4th 216 (4th Cir. 2022)(defendant convicted on drug charges after trial, challenged Guideline enhancement for maintaining a drug house, and ultimately received a downward variance); *United States v. Powers*, 40 F.4th 129 (4th Cir. 2022)(defendant convicted of fraud at trial, argued for downward variance and appealed sentence imposed); *United States v. Rose*, 3 F.4th 722 (4th Cir. 2021)(defendant convicted at trial of drug charges and challenged leadership enhancement at sentencing); *United States v. Gillespie*, 27 F.4th 934 (4th Cir. 2022)(defendant convicted by jury of robbery and firearm charges, argued for downward variance based on lenient sentences imposed on co-conspirators); *United States v. Louthian*, 756 F.3d 295 (4th Cir. 2014)(district court imposed variance sentence after fraud conviction at trial).

More particularly, there are numerous examples of cases where defendants convicted of large-scale frauds, like Perwaiz, were eventually sentenced to significant downward variances. In *Louthian*, the defendant was convicted at trial of numerous healthcare fraud counts, with a loss of nearly $1 million. *Louthian*, 756 F.3d at 301-302. The defendant was sentenced to 48 months in prison, a variance down from an advisory Guideline range of 121 to 151 months in prison. *Id.* at 302. The Government did not

challenge that sentence before this Court (although the defendant did). *Id.* at 306; *see also United States v. Curry*, 461 F.3d 452 (4th Cir. 2006)(vacating 12-month sentence, variance from 41-51 month range, after trial conviction for mail fraud).

Other cases are even more stark in the variance between the recommended Guideline range and the sentence eventually imposed. In *United States v. Adelson*, 301 F. App'x 93 (2d Cir. 2008), the defendant was convicted at trial of securities fraud (and related charges), producing a restitution order of $50 million and a forfeiture order of $1.2 million. *Id.* at 94-95. Nonetheless, at sentencing, the district court varied from "the applicable Guidelines range of life in prison" and imposed a sentence of 42 months in prison. *Id.* at 95. That was due, in part, to a lengthy sentencing memorandum filed by the defendant arguing for a variance sentence. *United States v. Adelson*, 1:05-cr-00325-JSR-2 (S.D.N.Y.), Dkt. No. 78. The Second Circuit affirmed that sentence on appeal by the Government. *Adelson*, 301 F. App'x at 94-95; *see also United States v. Parris*, 573 F. Supp. 2d 744, 745 (2008)( \two brothers sentenced for fraud to 60 months "in the face of an advisory guidelines range of 360 to life"); Reuters Staff, *Ex-AIG Exec Milton Sentenced to Four Years In Prison*, Reuters (January 27, 2009)(https://www.reuters.com/article/us-generalre-milton/ex-aig-exec-milton-sentenced-to-four-years-in-prison-idUSTRE50Q6AR20090127)(48-month sentence for $500 million fraud with minimum recommended Guideline sentence of 210 years); Reuters Staff, *Ex-General Re Chief Gets 2 Year Sentence for Fraud*, Reuters (December 16,

2008)(https://www.reuters.com/article/us-usa-crime-generalre/ex-general-re-chief-gets-2-year-sentence-for-fraud-idUSTRE4BF5F120081216).[10]

The reason why such sentences are not uncommon is because courts have recognized that "the calculations under the guidelines have run so amok that they are patently absurd on their face." *United States v. Adelson*, 441 F. Supp. 2d 506, 515 (S.D. N.Y. 2006); *see also Parris*, 573 F. Supp. 2d at 754 (calling the § 2B1.1 loss table "a black stain on common sense"). That is due to "a stubborn problem that has been explored by commentators repeatedly over the past thirty years," namely that § 2B1.1 "routinely recommends arbitrary, disproportionate, and often draconian sentences to first time offenders of economic crimes." Barry Boss and Kara Kapp, *How the Economic Loss Guideline Lost Its Way, and How to Save It*, 18 Ohio St. J. Crim. L. 605, 605-606 (2021). That is due to the loss table, which was "designed (and redesigned) by the Commission to drive the severity of sentences for fraud offenders based primarily on the magnitude of the loss." *Id.* at 608. When initially promulgated, "the Commission deviated from its standard practice of anchoring the recommended sentencing ranges in the empirical data," partly by excluding "from its analysis fifty percent of the total data – every sentence in which a judge had issued a sentence of probation." *Id.* at 609. A "series of amendments" compounded that error, so that the "loss table today recommends

---

[10] Those convictions were ultimately reversed on appeal. *United States v. Ferguson*, 676 F.3d 260 (2d Cir. 2011). There is no mention as to whether the Government cross appealed the sentences given.

sentences for economic crimes that are *orders of magnitude* greater than the same sentence of the same crime back in the mid-1980s." *Id.* at 613. As a result, the "gulf between recommended Guideline sentences and any grounding in empirical data fundamentally undermines the Guideline's ability to fulfill its key function." *Ibid.* The Guideline "has failed in its mission and, in its current form, cannot be justified by the policy concerns animating its dysfunctional design." *Id.* at 614. In addition, "using the steep ladder of loss enhancements as a proxy for seriousness of the offense results in unfair double counting" as the means by which such losses are generated are subjected to additional enhancements for things like sophisticated means or a large number of victims. *Id.* at 616. The "severe increases in the loss table, coupled with these independent enhancements, result in deeply unfair double counting, which in high loss cases often results in the extreme and disproportionate recommendation of life imprisonment." *Id.* at 617.

As a result of these flaws, "a broad judicial consensus has developed that Section 2B1.1's loss table overstates culpability in a great many cases" Boss and Kapp at 618. Indeed, less than half of all defendants sentenced under U.S.S.G. § 2B2.1 receive a sentence within the advisory Guideline range. Table E-7 of 2021 USSG Sourcebook (https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2021/TableE7.pdf). Most importantly, Perwaiz's Guideline calculation bore the hallmarks of the criticisms of § 2B1.1 that have fueled significant

downward variances in other large-scale fraud cases. Twenty levels were added to Perwaiz's base offense level due to the loss calculation, with an additional three levels added because part of that loss involved Government healthcare programs. He also received two-level enhancements for sophisticated means and number of victims, both of which are tied to the scope of the scheme necessary to produce the loss amount. JA9864. What the current state of § 2B1.1, and its application in the district courts, makes clear is that there were avenues for argument Perwaiz's trial counsel could have made at sentencing, rather than "not requesting any particular sentence." JA3448.

Perwaiz recognizes that the sentence imposed in this case was, ultimately, a downward variance from the advisory Guideline "range" of nearly five centuries in prison. However, that distinction has little meaning, given that the sentence imposed is still a *de facto* life sentence based on Perwaiz's age. There were arguments trial counsel could have made with that fact in mind advocating for a sentence that might have allowed Perwaiz to one day be released from prison. Given the Government's final offer to let Perwaiz plead guilty to a single count with a 10-year maximum sentence, a sentencing argument for a similar sentence would not have been unreasonable. JA165-168. They not only failed to make any successful argument on Perwaiz's behalf, they made none at all.

"Occasionally, the performance of defense counsel is so dismal that it ripens into the deprivation of counsel altogether." *Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001).

42

This is one of those occasions. Sentencing in the wake of a trial conviction strips counsel of some common tools of sentencing advocacy, such as contrition and acceptance of responsibility, but does not require surrender. As set forth above, numerous defendants have been convicted at trial and then made substantive sentencing arguments that did not undermine their continued assertion of their innocence, particularly in cases involving fraud. By failing to make any argument on Perwaiz's behalf, his sentencing hearing lost "its character as a confrontation between adversaries," resulting in a violation of his Sixth Amendment right to counsel. *Cronic*, 466 U.S. at 656-657. As a result, his sentence must be vacated.

## CONCLUSION

This Court should reverse Perwaiz's convictions for one of two reasons. First, the district court erred by allowing the Government to present detailed evidence of the factual bases for Perwaiz's prior tax fraud convictions and suspension of hospital privileges. The facts alleged related the suspension of hospital privileges should not have been admitted under Rule 404(b) of the Rules of Evidence. Even if it was admissible under that rule, that evidence and the facts underlying Perwaiz's prior tax conviction were more prejudicial than probative and should have been excluded under Rule 403. Second, the district court plainly erred by allowing seven of Perwaiz's patients to testify about his conduct, even though they were not named in any of the counts of the superseding indictment for which he was on trial. That testimony was not intrinsic

43

to the charged offenses and was otherwise inadmissible under Rule 404(b). Even if this Court affirms Perwaiz's convictions, it should vacate his sentence because he received ineffective assistance of counsel when trial counsel abandoned him at sentencing.

### REQUEST FOR ORAL ARGUMENT

Pursuant to Rule 34(a) of the Federal Rules of Appellate Procedure, Perwaiz hereby requests oral argument. Oral argument would provide a full and fair airing of these issues and provide this Court with the most assistance for resolving this case and providing guidance for courts and parties going forward

Respectfully submitted,

**JAVAID PERWAIZ**
By Counsel

**WESLEY P. PAGE**
**FEDERAL PUBLIC DEFENDER**

**s/Jonathan D. Byrne**
Jonathan D. Byrne
Appellate Counsel
Office of the Federal Public Defender
Room 3400, United States Courthouse
300 Virginia Street East
Charleston, West Virginia 25301
E-mail: jonathan_byrne@fd.org

## <u>CERTIFICATE OF COMPLIANCE</u>

1.   The foregoing brief has been prepared in a proportionally spaced typeface using Microsoft Word, Garamond, 14 point.

2.   Exclusive of the table of contents; table of citations; certificate of compliance and the certificate of service, the foregoing brief contains <u>10,905</u> words.

3.   I understand that a material misrepresentation can result in the Court striking the brief and imposing sanctions.  If the Court so directs, I will provide an electronic version of the brief with the word or line printout.


**<u>s/Jonathan D. Byrne</u>**
Jonathan D. Byrne
Appellate Counsel
Office of the Federal Public Defender